Ash Realty Corporation, Plaintiff and Appellant, v. City
of Milwaukee, Defendant: Village of Brown Deer,
Defendant and Respondent.*

*September 2—October 6, 1964.*

* Motion for rehearing denied, with costs, on November 24, 1964.

For the appellant there were briefs by *Whyte, Hirschboeck, Minahan, Harding & Harland,* attorneys, and *Richard P. Buellesbach* and *Richard D. Silberman* of counsel, all of Milwaukee, and oral argument by *Mr. Buellesbach.*

For the respondent there was a brief and oral argument by *Harold H. Fuhrman* of Milwaukee.

A brief *amicus curiae* was filed by *Julian Bradbury* of Madison, for the League of Wisconsin Municipalities.

HEFFERNAN, J. Ash Realty's complaint states that the tax was paid under protest to the village of Brown Deer and to Milwaukee and that the plaintiff is unable to determine respective claims of Brown Deer and Milwaukee. Ash Realty's complaint states only what would constitute a cause of action under sec. 74.73 (1), Stats. That statute reads:

"Any person aggrieved by the levy and collection of any unlawful tax assessed against him may file a claim therefor against the town, city, or village, whether incorporated under general law or special charter, which collected such tax

in the manner prescribed by law for filing claims in other cases, and if it shall appear that the tax for which such claim was filed or any part thereof is unlawful and that all conditions prescribed by law for the recovery of illegal taxes have been complied with, the proper town board, village board, or common council of any city, whether incorporated under general law or special charter, may allow and the proper town, city, or village treasurer shall pay such person the amount of such claim found to be illegal and excessive. If any town, city, or village shall fail or refuse to allow such claim, the claimant may have and maintain an action against the same for the recovery of all money so unlawfully levied and collected of him. Every such claim shall be filed; and every action to recover any money so paid shall be brought within one year after such payment and not thereafter."

Ash Realty contends that it has alleged a common-law action to recover illegal taxes and that therefore the limitation is not the year set by sec. 74.73 (1), Stats., but a longer period as provided by appropriate sections of ch. 330, Stats. A review of the requirements of a common-law cause of action reveals that the complaint herein does not allege facts sufficient to constitute the common-law action. Under the doctrine of early cases of *Powell v. Board of Supervisors* (1879), 46 Wis. 210, 50 N. W. 1013, and *Parcher v. Marathon County* (1881), 52 Wis. 388, 9 N. W. 23, the common law prevailed that the taxpayer must allege that the tax was paid under a threatened or impending levy by the sheriff. In the *Parcher Case,* the plaintiff alleged: (1) That the tax was illegal; (2) that the sheriff threatened levy and sale, but that plaintiff intended to recover the same.

Referring to the requirements necessary to a common-law cause of action, this court has said:

"The rule formerly prevailed in Wisconsin that a mere payment of taxes under protest was not sufficient; that to entitle one to recover taxes paid under protest it must appear that the tax collector had done more than to merely

notify the taxpayer that the tax roll is in his possession for collection, as was done in the case at bar." *Welch v. Oconomowoc* (1928), 197 Wis. 173, 178, 221 N. W. 750.

By merely alleging that the taxes were paid under protest, Ash Realty fails to meet the requirements of the common-law cause of action. There must be evidence of compulsion, 64 C. J. S., Municipal Corporations, p. 828, sec. 2069b. Ash Realty made no allegation of threatening levy by the sheriff or the other elements that the common law requires. Ash Realty has only pleaded the allegations requisite to the statutory action described by sec. 74.73 (1), Stats.

It is apparent therefore that no common-law cause of action has been pleaded or now can be pleaded by the appellant.

Whatever rights it has are those that are conferred upon it by statute. The statute provides that "every action to recover any money so paid shall be brought within one year after such payment and not thereafter." Appellant contends, however, that the annexation was wholly void and that any attempt to levy and collect a tax was a mere usurpation and that as to wholly void taxes, no statute of limitations is applicable.

We are in disagreement, at least insofar as this proposition would apply here; we cannot agree that the action of Brown Deer was a "mere usurpation" or that the annexation was wholly void in the sense intended by the appellant.

A review of the previous cases involving this annexation shows that substantial doubt did exist as to the true status of this property. By the appellant's very pleading there is revealed the good-faith doubt whether its property was, at the time the tax was paid, in the city of Milwaukee or the village of Brown Deer. At one point in the proceedings an order had been entered enjoining the village of Brown Deer from exercising jurisdiction over the territory involved. Subsequently in *Brown Deer v. Milwaukee* (1956), 274 Wis.

50, 79 N. W. (2d) 340, this court affirmed the vacation of that order. It is clear from the statements in the briefs of both counsel that during the period in question the village of Brown Deer did exercise municipal jurisdiction. It cannot be said that the annexation attempted by Brown Deer was void or unlawful in the sense that the appellant urges. It attempted an annexation that apparently would have been in all respects valid, if one of the corporate petitioners had taken the appropriate internal action to authorize its officers to sign the petition. Despite competing claims, what Brown Deer attempted to do was lawful. The cases that appellant urges as precedent are of a different type. *Trustees of Clinton Lodge v. Rock County* (1937), 224 Wis. 168, 272 N. W. 5. To tax exempt property is unlawful in the sense that the local government is attempting to do what the legislature has specifically forbidden. To attempt the annexation of noncontiguous property is unlawful in that no substantive right had been conferred upon the municipality to annex other than contiguous territory. *Smith v. Sherry* (1880), 50 Wis. 210, 6 N. W. 561. By law noncontiguous property can under no circumstances be annexed, and any attempt to tax such property is void. Nor was the situation similar to that discussed in *Smith v. Sherry* (1882), 54 Wis. 114, 11 N. W. 465, where the action failed to follow legislative dictates by attempting annexation by an unpublished order. The court reasoned that such action, if allowed, would cause "interminable mistakes." See also *Knox v. Cleveland* (1860), 13 Wis. 274 (*245), and *Wisconsin Real Estate Co. v. Milwaukee* (1912), 151 Wis. 198, 138 N. W. 642.

However, here a different situation exists. Brown Deer had the substantive right to attempt the annexation. It was through no unlawful act of Brown Deer, or of any overreaching of its delegated powers that the annexation failed. What it attempted could have been legally done. We hold

therefore that for the purpose of this situation, at least, the exercise of jurisdiction over the territory here involved was of colorable legality. This court recognized in *Brown Deer v. Milwaukee* (1956), 274 Wis. 50, 79 N. W. (2d) 340, that Brown Deer's annexation had created an affinity between it and the residents of the area that gave rise to at least a provisional governmental relationship. It is recognized that Brown Deer did render municipal services to the area involved during the years 1957, 1958, and 1959. Brown Deer did exercise jurisdiction over the area in those years. The government of the area during that time was the government given to it by Brown Deer.

The status of an annexation *de facto* is recognized, 37 Am Jur., Municipal Corporations, p. 649, sec. 32. The elements required of a *de facto* corporation are these: A valid statute, an organization in good faith, a colorable compliance with the statutes, and the assumption of corporate powers, 37 Am. Jur., Municipal Corporations, p. 630, sec. 11. All of these elements were present here. We hold that the tax was levied under the color of right, though all parties concerned knew that the annexation remained to be tested in the courts. Despite the fact that the dual payment of taxes to Milwaukee and Brown Deer showed the recognition of the eventual uncertainty of outcome, the taxpayer took not even the most elementary steps to protect itself. It now, after it has foreclosed itself from further rights against Milwaukee by failing to appeal from the order sustaining Milwaukee's demurrer, is proceeding against Brown Deer for the recovery of taxes, though Brown Deer rendered the services during the period in question. While equity is sometimes available to succor the bewildered taxpayer, who may be caught in a thicket of intergovernmental litigation, we do not think it equitable to allow recoupment from Brown Deer which has rendered services to it.

Reference should be made to *Town of Fond du Lac v. City of Fond du Lac* (1963), 22 Wis. (2d) 525, 126 N. W. (2d) 206, for a discussion of the equitable powers of the trial court to afford relief from the uncertainty arising during the course of contested annexation proceedings. Although the appellant herein now finds itself in the unenviable position of being burdened by double taxation, it must be recognized that it failed to take prompt action on its own behalf although it was fully aware of the situation it faced.

Short statutes of limitation particularly where the financial structure of our government is concerned, are in the public interest. As stated in the brief filed *amicus curiae,* "Municipalities . . . need such legislative bulwarks against uncertainty as are provided by statutes of limitation on tax litigation under s. 74.73 (1)."

The object of such a statute is to compel the prompt exercise of a right of action. This is particularly important in the assertion of a claim against a municipal corporation where terms of office are short and personnel is constantly changing.

Our court in an early case summed up the philosophy behind such statutes.

*"Interest reipublicae ut sit finis litium.* It is therefore the policy of the law that some reasonable lapse of time should end all controversies; . . . This is the philosophy of statutes of limitation. They are therefore called statutes of repose. They give possession rest from litigation. When they have run, they bar forever all previous rights. . . ; silence forever all objections against it and all criticisms upon it. The claims which would have prevailed over it before, become extinct. The defects which would have been fatal to it before, are cured. Whatever could have been heard to impeach it before, can be heard no more forever. So it is here. The respondents had their day to impeach the tax proceeding. . . . Then they might have said that the groundwork was so defective that there was no tax, . . . This they did not then do, and they are now too late to do it. They suffered

the statute to purge the tax proceeding of all defects, to raise the tax deed above impeachment. Their objections may be well founded. But they come out of time. What the respondents might have said, they can not now say. The statute has left them like one estopped to speak the truth, because they did not speak it when they might." *Oconto County v. Jerrard* (1879), 46 Wis. 317, 326, 50 N. W. 591.

*By the Court.*—Judgment affirmed.

HALLOWS and BEILFUSS, JJ., dissent.