Wilkie, J.
Two issues are presented on this appeal:
First, was the annexation petition invalid because not signed by the president of Racine Properties, Inc. ?
Second, is the annexation void because the boundary lines were drawn in such a way as to eliminate electors from the area proposed for annexation ?

Validity of Petition.

The board of directors of Racine Properties, Inc., which owned over half of the land in terms of area and assessed value, adopted the following resolution:
“Be it further Resolved, that George P. Demos, as President of the corporation, be and he hereby is authorized to execute such papers and documents on behalf of the corporation as are necessary and required to accomplish such annexation and that Craig T. Griffin, as Secretary of the corporation, be and he hereby is authorized to countersign such papers and documents on behalf of the corporation.”
Relying on Brown Deer v. Milwaukee,[3] respondent contends that the petition was invalid because it was signed only by the secretary. In Brown Deer, the president of the com *527 pany which desired to annex its land to the village of Brown Deer, signed the petition without having obtained either formal or informal authorization from the board of directors. This court held that a third party challenging the annexation could raise the question of the officer’s authority to sign the petition. In the present case it is undisputed that the directors had authorized the officers to act. Therefore, the most that Brown Deer does is give respondent the standing to attack the petition on the ground that both the president and secretary were required to sign the petition.
The resolution specifies that the signatures of both the president and secretary (or at the very least, the president) were required on any papers concerning the annexation. This is because the secretary was authorized to “countersign” any documents, and countersigning, by definition, is the adding of “one’s signature . . . after another’s to attest authenticity.” [4] Although the petition was not signed in strict conformity with the resolution, the trial court concluded that this defect should not operate to vitiate the petition since the signing was merely a ministerial act to be done pursuant to the actual pre-existing authorization. We agree.

Validity of Annexation.

Annexation procedures are purely statutory.[5] This direct annexation (as distinguished from one by referendum) was proposed under the provisions of sec. 66.021, Stats., as an annexation within a populous county (sec. 66.021 (11) (a)) and not involving one square mile or more (sec. 66.021 *528 (11) (b)). There is a common-law presumption of validity which attaches to an annexation ordinance that remains until overcome by proof produced by the party attacking it.[6]
Assuming that the prescribed procedures have been followed in the adoption of an annexation ordinance, it may be attacked in the courts on the ground that it is “arbitrary and capricious or is an abuse of discretion.” [7]
In the instant case the town of Mt. Pleasant attacks the ordinance complaining that it is arbitrary and capricious and unreasonable in the way the boundary lines are drawn so “as to arbitrarily eliminate electors from participating in the annexation proceedings and without regard for city needs and purposes.” Respondent does not attack the ordinance on the ground that the territory lacks sufficient contiguity as was done in the first Mt. Pleasant v. Racine Case. Apparently respondent concedes that the addition of more land at the junction with the city cures that defect.
Following the taking of testimony, the trial court found:
“in segmenting jurisdiction along the Meachem Road, ten homes containing twenty electors were excluded from the area annexed; the excluded areas are bounded on three sides by the City of Racine, and they could have been included and given City services, and no municipal reason was advanced for their not being included in the annexed territory; . . .”
and
“that to adopt a rational and natural boundary line along the Meachem Road it would have been necessary to include *529 the said twenty electors; that the boundary lines were gerrymandered so as to exclude at least twenty electors; that the said boundary lines are not reasonable or realistic, and create crazy-quilt boundaries which are difficult for both the City of Racine and the Town of Mt. Pleasant to administer ; that the boundary lines transcend into the realm of arbitrary and capricious action; that the annexation of the annexed area is an unreasonable annexation.”
As a conclusion of law the court stated:
“That a rational and natural boundary line along Meachem Road would have included twenty electors which were not included in the annexation; that the annexation boundary lines were gerrymandered so as to exclude at least twenty electors; that the boundary lines are not reasonable or realistic and result in crazy-quilt boundaries difficult for both City and Town to administer; that the boundary lines transcend into the realm of arbitrary and capricious action; and that the annexed area does not meet the test of reason; and that said annexation is void.”
Thus the court centered its attention on the boundary line along Meachem road. The record discloses, as shown on the accompanying map, that parts of the land both east and west of Meachem road were to remain in the town of Mt. Pleasant (G, H, I), while three interspersed areas (C, F and J) were incorporated in the proposed territory. Proceeding along Meachem road from north to south this left three parcels of land abutting on Meachem road in the township, on which parcels 10 different residences were located containing a total of 20 electors. The record reveals no proof of the reason why these residences were not included in the proposed annexation. Not one of the 20 excluded *530 electors testified. The town asserted, and the trial court determined that the petitioners left out these areas and excluded at least 20 electors from the annexation proceedings, although there was no municipal reason for not including them in the annexed territory. In effect, the trial court shifted the burden of proof to the city once the annexation was attacked as being unreasonable. Once the annexation was questioned the city was expected to prove that there was a sound municipal reason for the exclusion of each and every piece of property not covered by the annexation. This was error. Although an annexation ordinance may be attacked in the courts under the rule of reason because it is alleged to be arbitrary and capricious, the party taking this position has the burden of proving that, in fact, the ordinance is arbitrary and capricious.[8] There is nothing in the record to sustain the trial court’s finding that the annexation was arbitrary and capricious or unreasonable. Although there was proof that the 10 residences existed and that there were at least 20 electors in those excluded residences, there was no evidence indicating in any way that these electors had been approached by either the petitioners or the city or the objectors as to their views on the proposed annexation and the rendition of municipal services. There was the bare assertion that the lines had been drawn arbitrarily to exclude these electors. On this state of the record we have no hesitation in concluding that there is no evidence to support the trial court’s disputed findings.
Under the 1957 and 1959 comprehensive legislative rewrite of the annexation laws,[9] court review of annexation is contemplated and the rule of reason applies to court review *531 of proposed annexations.[10] The annexation procedures provide for the sending of a notice of the proposed annexation to the state director of the planning function in the department of resource development.[11] Under sec. 66.021 (11) (a), Stats., if, as here, an annexation is proposed of less than one square mile in a metropolitan community, that officer is to send a report to the annexing municipality if he finds that the annexation “is against the public interest,” as defined by the statute.[12] Although he was given the required notice of the proposed second Georgetown annexation, the director did not send a report stating that the annexation was against the public interest. Therefore, it may be assumed that he concluded that the annexation was not against the public interest and that the Racine city council took the position of the director into account in acting on the annexation ordinance. When, as here, the annexation is later challenged in the courts on the ground that it is “arbitrary and capricious” the position of the director is evidence to be considered by the court in analyzing the proposed annexation in terms of the challenge made against it.
*532 Out of the total area of 172 acres covered by the proposed annexation, 132 acres are platted. Most of the land is agricultural and at the time of the petition only 26 electors (17 signed the petition) actually resided in the proposed annexed area. The record discloses that the city was prepared to furnish all municipal services in the area including sewer, water, rubbish, garbage collection, fire and police protection. Within five years the city was scheduled to make all the capital improvements needed in the area. Some of the roads in the area were already in and improved.
Respondent contends that the facts of the instant case are completely within the following statement in Town of Fond du Lac v. City of Fond du Lac: [13]
“In the case at bar the exclusion of the small island from Kiekhaefer’s property which contained two residences was solely to preclude the electors living therein from participating in the annexation proceeding. Such reason is not justifiable or germane to the purpose of the annexation to develop a future industrial area. Creating an island within the city solely for the purpose of assuring the success of the annexation was an arbitrary and capricious action and an abuse of discretion and invalidates the annexation.”
The present case is distinguishable from Fond du Lac on at least three grounds: First, in Fond du Lac the proposed boundary lines were such that if the annexation plan were adopted, a piece of township land 300 feet by 130 feet would be completely surrounded by city territory. The boundary lines associated with the Georgetown annexation do not create any “island.” Second, in Fond du Lac the annexation proceedings were commenced by the city while in the present case the city was bound to accept the plan “as is” since Racine Properties, Inc., was the petitioner. Third, the Meachem road electors, who were not included did not con *533 test the proposed annexation while in Fond du Lac the similarly situated property owner did. In fact, the town of Mt. Pleasant electors did not even testify in support of the opponents of the annexation.
In Madison v. Monona,[14] this court recognized that the annexation statutes place “no restrictions or requirements as to the amount of territory to be included, and . . . [they do] not require that the boundaries of such territory be according to any set pattern.” The boundaries of the territory to be annexed are discretionary with the petitioner.[15]
Although the courts have the jurisdiction on review to determine whether a proposed annexation is arbitrary and capricious, the party so contending still has the burden of proving that the annexation is arbitrary and capricious, thus overcoming the presumed validity of the ordinance. This the town of Mt. Pleasant failed to do and we must therefore set aside the trial court’s determination that the ordinance was void.
On its appeal, respondent contends that even though the trial court declared the annexation invalid, it mistakenly enjoined the township from attempting to exercise control over the area in question while actually allowing the city to continue jurisdiction. Although this issue is rendered moot by our decision on appellant’s appeal, the procedure employed by the trial court was proper in that it was merely preserving the status quo as suggested in Town of Fond du Lac v. City of Fond du Lac.[16]
By the Court. — Judgment reversed as to appeal by the city of Racine; order affirmed as to appeal by the town of Mt. Pleasant.

 (1962), 16 Wis. (2d) 206, 114 N. W. (2d) 493.

 Webster’s New International Dictionary (3d ed., unabridged).

 Greenfield v. Milwaukee (1956), 272 Wis. 388, 391, 75 N. W. (2d) 434; Zweifel v. Milwaukee (1925), 188 Wis. 358, 364, 206 N. W. 215.

 Greenfield v. Milwaukee, supra, footnote 5, at page 395; State ex rel. Madison v. Monona (1960), 11 Wis. (2d) 93, 97, 104 N. W. (2d) 158.

 “In annexation proceedings the city council in the first instance determines the suitability or adaptability of the area proposed to be annexed and the necessity of annexing the same for the proper *529 growth and development of the city. Upon a review the courts cannot disturb the council’s determination unless it appears that it is arbitrary and capricious or is an abuse of discretion.” Town of Brookfield v. City of Brookfield (1957), 274 Wis. 638, 646, 80 N. W. (2d) 800.

 Supra, footnote 6.

 Sec. 66.021, Stats., ch. 676, Laws of 1957, ch. 261, Laws of 1959. See report of the Interim Urban Problems Committee to the 1959 Wisconsin Legislature, pp. 13, 14, and notes contained in Bill No. 226, A. (which became ch. 261, Laws of 1959). Also see 1957 General Report of Legislative Council, Vol. II, pp. 222-235.

 Town of Fond du Lac v. City of Fond du Lac (1964), 22 Wis. (2d) 533, 541, 126 N. W. (2d) 201; Mt. Pleasant v. Racine, supra, footnote 1, at page 45.

 Sec. 66.021 (11) (a) and (b), Stats.

 Sec. 66.021 (11) (c), Stats., provides as follows: “For purposes of this subsection public interest is determined by the director of the planning function in the department of resource development after consideration of the following:
“1. Whether the governmental services, including zoning, to be supplied to the territory could clearly be better supplied by the town or by some other village or city whose boundaries are contiguous to the territory proposed for annexation which files with the circuit court a certified copy of a resolution adopted by a two-thirds vote of the elected members of the governing body indicating a willingness to annex the territory upon receiving an otherwise valid petition for the annexation of the territory.
“2. The shape of the proposed annexation and the homogeneity of the territory with the annexing village or city and any other contiguous village or city.”

 Supra, footnote 10, at page 542.

 (1960), 10 Wis. (2d) 32, 40, 102 N. W. (2d) 206.

 Madison v. Monona, supra, footnote 14; In re Village of Oconomowoc Lake (1959), 7 Wis. (2d) 400, 97 N. W. (2d) 189; Town of Fond du Lac v. City of Fond du Lac, supra, footnote 10.

 (1964), 22 Wis. (2d) 525, 532, 126 N. W. (2d) 206.